**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EVELYN SAVOY, Parent and Next Friend
of T.W.,

     Plaintiff,

     v.

DISTRICT OF COLUMBIA,

     Defendant.

**Civil Action No. 11-145 (CKK)**

**MEMORANDUM OPINION**
(February 21, 2012)

Plaintiff Evelyn Savoy filed suit as the parent and next friend of her son, T.W., seeking injunctive and declaratory relief against the District of Columbia under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiff is appealing the Hearing Officer Determination which found that placing T.W. at Ballou Senior High School did not deny T.W. a free appropriate public education. Presently before the Court are the parties' cross-motions for summary judgment. Pl.'s Mot. for Summ. J., ECF No. [11]; Def.'s Cross-Mot. for Summ. J., ECF No. [13].[1] Upon consideration of the parties' briefs, the Administrative Record, and the applicable authorities, the Court finds the Hearing Officer Determination was correct. Therefore Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for Summary Judgment is GRANTED.

---

[1] For ease of reference, the Court shall refer to the parties' pleadings as follows: Pl.'s Mot. for Summ. J., ECF No. [1] ("Pl.'s Mot."); Def.'s Cross-Mot. for Summ. J. & Opp'n to Pl.'s Mot. for Summ. J., ECF Nos. [13, 14] ("Def.'s Opp'n"); Pl.'s Reply & Opp'n to Def.'s Cross-Mot. for Summ. J., ECF Nos. [15, 16] ("Pl.'s Reply"); Def.'s Reply, ECF No. [17].

# I.  EVIDENTIARY ISSUES

Before addressing the merits of the parties' motions, the Court briefly turns to an issue with the Plaintiff's pleadings.  In the Scheduling and Procedures Order, the Court emphasized that the parties were expected to "comply **fully** with Local Civil Rule LCvR 7(h)" in submitting statements of material facts not in dispute in support of their respective motions.  3/9/11 Order, ECF No. [9], at 1 (emphasis in original).  The Court explained that

> A party responding to a statement of material facts must respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied.  The responding party should include any information relevant to its response in that paragraph.  If the responding party has additional facts that are not addressed in the corresponding paragraphs, the responding party should include these at the end of its responsive statement of facts.  At all points, parties must furnish precise citations to the portions of the record on which they rely.

*Id.* at 1-2.

Both parties submitted statements of material facts in support of their respective motions.  Pl.'s Stmt., ECF No. [11], at 16-19; Def.'s Stmt., ECF No. [14-2].  Defendant also filed a response to Plaintiff's statement, specifically indicating what paragraphs Defendant does not dispute, which assertions Defendant disputes, and in some cases correcting the inaccurate record citation supplied by Plaintiff.  Def.'s Resp. Stmt., ECF No. [14-1].  By contrast, Plaintiff's Response Statement only responded to paragraphs 11 and 12 of Defendant's Statement.  Pl.'s Resp. Stmt., ECF No. [15].  For the twenty five other paragraphs, Plaintiff states each paragraph "is not disputed to the extent that this paragraph contains a description of the cited documents, which speak for themselves and to which no response is necessary."  *Id.* at ¶¶ 1-10, 13-27.  Plaintiff's Response Statement is plainly deficient.  The entire purpose of the statement of material facts is to enable the Court to determine which facts the parties agree upon without

forcing the Court to resort to reviewing the documents individually.  Plaintiff's Response

Statement forces the Court to examine the administrative record to identify even non-

controversial facts, defeating the entire purpose of Local Civil Rule 7(h).  Moreover, it is simply

disingenuous for Plaintiff to refuse to admit basic facts including T.W.'s age (Def.'s Stmt. ¶ 1),

where T.W. attended school (*id.* at ¶ 2), or even the date of the Due Process Hearing (*id.* at ¶ 20).

Since Plaintiff failed to follow the instructions provided by the Court and the Local Rules, the

Court will treat all but paragraphs 11 and 12 of Defendant's Statement as conceded by Plaintiff.

## II. BACKGROUND

*A.     Statutory Framework*

The IDEA was enacted to "ensure that all children with disabilities have available to

them a free appropriate public education that emphasizes special education and related services

designed to meet their unique needs and prepare them for further education, employment, and

independent living."  20 U.S.C. § 1400(d)(1)(A).[2]  Once a child is identified as disabled, the

school district must convene a meeting of a multi-disciplinary team ("MDT") to develop an

individualized education program ("IEP") for the student.  *See* § 1414.[3]  The IEP must include a

variety of information, including the child's current levels of academic achievement and

functional performance, measurable annual goals, how the child's progress towards the goals

_____

[2]  The IDEA was re-authorized and re-codified pursuant to the Individuals with
Disabilities Education Improvement Act in 2004, Pub. L. No. 108–446, 118 Stat. 2647 (2004).
The short title of the re-authorized and amended provisions remains the Individuals with
Disabilities Education Act.  *See* Pub. L. No 108–446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400
(2006). Accordingly, the Court refers to the amended Act herein as the IDEA.

[3]  Unless otherwise indicated, all section references are to Title 20 of the United States
Code.

will be measured, and the special education and related services to be provided to the child.  §
1414(d)(1)(A)(I).  The MDT is required to periodically review the child's IEP, at least once per
year.  § 1414(d)(4)(A)(I).  The IDEA also provides procedures for parents of a child receiving
services under the statute to contest placement decisions and the implementation of the IEP by
the child's school.  *See* § 1415.

      B.     *Factual Background*

      T.W. is now a sixteen year old special education student.  *See* Administrative Record
("A.R.") 20.  T.W. attended the Children's Guild of Prince Georges County for seventh and
eighth grade.  Def.'s Stmt. ¶ 2.  T.W. underwent a comprehensive psychological and social
evaluation during the seventh grade (October 2008).  *Id.* at ¶ 3.  The evaluation team diagnosed
T.W. with antisocial personality disorder.  A.R. 30 (Psychological Evaluation).  T.W. was further
classified as having a learning disability, with low average verbal comprehension and perceptual
reasoning abilities, borderline verbal comprehension, impulsiveness and oppositional tendencies.
Def.'s Stmt. ¶ 3.

      1.     <u>Placement at Ballou</u>

      On January 5, 2010, during T.W.'s eighth grade year, his MDT met to revise his IEP.
Def.'s Stmt. ¶ 4.  The IEP classified T.W. as learning disabled, and outlined goals for T.W. in
math, reading, written expression, and emotional, social and behavioral development.  *Id.* at ¶¶
5-6.  The IEP provided that T.W. should receive 28.5 hours of specialized instruction and 1.5
hours of behavioral support services each week, both outside the general education setting.  *Id.* at
¶ 7.  In describing the "least restrictive environment" where T.W. should be placed, the IEP
stated

> General Education Rejected possible school failure insufficient supports available
> General Education w Sped Component Rejected services required to support IEP
> are not available Separate Day school Accepted- behavior modification program,
> small structured class size, on staff therapists provide support to enable [T.W.] to
> progress academically, socially and behaviorally.

A.R. 45 (all errors in original).

At the conclusion of the 2009-2010 school year, T.W. aged out of the Children's Guild.

Def.'s Stmt. ¶ 10.  T.W.'s MDT met in July 2010 to discuss T.W.'s placement for the 2010-2011

school year.  *Id.*  Plaintiff proposed placing T.W. at the High Road Academy in Lanham,

Maryland.  *Id.* at ¶ 13.  The District proposed, and the MDT ultimately decided, to place T.W. at

Ballou Senior High School, a public school in the District of Columbia.  *Id.* at ¶ 11.

Dissatisfied with the results of the IEP review meeting, Plaintiff filed a Due Process

Complaint on August 5, 2010.  Def.'s Stmt. ¶ 14; A.R. 79-84 (Due Process Complaint).  The

Due Process Complaint alleged DCPS failed to provide T.W. with a free appropriate public

education "by failing to determine an appropriate educational placement/location of services."

A.R. 81.  Specifically, Plaintiff alleged that placing T.W. at Ballou was inadequate because it

was not a "separate, fulltime, special education program," and that Ballou "cannot implement the

student's IEP and cannot provide him the services to which he is entitled," because "Ballou is an

inclusion program and has yet to be fully developed."  *Id.*  Plaintiff requested, among other

things, that (1) T.W. be placed at High Road Academy; (2) T.W. undergo a new comprehensive

psychological evaluation; (3) a new MDT meeting be held to update T.W.'s IEP; and (4) all

future MDT meetings be scheduled through Plaintiff's counsel.  *Id.* at 82.

        2.   <u>Due Process Hearing</u>

The Due Process Hearing commenced on October 14, 2010 in front of Hearing Officer

Frances M. Raskin.  A.R. 134 (Transcript of Due Process Hearing).  Corrine Anyanwu, the head

of administration at High Road Academy, testified on behalf of T.W., asserting that High Road Academy would be able to implement T.W.'s IEP. *Id.* at 151-162.  Plaintiff testified, stating that T.W. had been suspended twice while attending Ballou, for one day each time. *Id.* at 178:9-18. Plaintiff indicated that when T.W. initially enrolled at Ballou, she routinely received calls from T.W.'s teachers regarding his behavior, but that the calls stopped after T.W.'s second schedule change. *Id.* at 188:2-4.  Plaintiff admitted she never visited Ballou, and did not know anything about the program in which T.W. was enrolled. *Id.* at 181:3-21, 183:13-184:2.

Dori Cook, T.W.'s educational advocate also testified. *See id.* at 191.  Plaintiff's counsel asked Ms. Cook about the July 2010 meeting where T.W.'s MDT decided to place T.W. at Ballou instead of High Road Academy.  Ms. Cook mentioned that T.W.'s social worker at the Children's Guild, Ms. Shaun Feltom, purportedly wanted to modify the behavioral program implemented for T.W. *Id.* at 200:20-201:16.  The District objected to this testimony, and after clarifying that Ms. Cook was discussing what Ms. Feltom had purportedly stated at a previous MDT meeting, not the July 2010 meeting, the Hearing officer limited Ms. Cook's testimony to what Ms. Cook stated at the July meeting, and not what the social worker orally recommended on some earlier occasion. *Id.* at 202:16-205:5.  It was clarified at this point in the Hearing record by Plaintiff's counsel that Plaintiff was not challenging the appropriateness of T.W.'s IEP. *Id.* at 203:7-14.  Ms. Cook indicated she observed T.W. in class at Ballou on two occasions. *Id.* at 212:3-9.  On the first occasion, Ms. Cook observed T.W. with the first iteration of his schedule, observing his math and science classes. *Id.* at 213:1-4.  Ms. Cook observed T.W. a second time in a new math class. *Id.* at 219:4-9.  During the second observation, Ms. Cook noted that two additional adults in the math classroom, whom she inferred were support staff, failed to provide any "academic or instructional support" to T.W. *Id.* at 220:12-19.  T.W. apparently sat by

himself and did not do any work, routinely putting his head down on his desk. *Id.* at 220:19-221:22. From this observation, Ms. Cook concluded T.W.'s behavior intervention plan was not being properly implemented and that he was being educated in "inclusion" classes with non-disabled students rather than a special education classes. *Id.* at 221:16-22, 225:11-227:12. Under cross-examination, Ms. Cook admitted that she concluded that T.W. was in inclusion classes because she did not see a "special educator" in the class, but knew nothing about the instructors or the actual students in the class. *Id.* at 225:11-227:12. Ms. Cook also concluded that the adults in T.W.'s class were "support staff" because of a conversation she overheard between the teacher and one of the adults, but did not ask anyone to confirm her suspicions. *Id.* at 228-29.

T.W. testified and explained that his schedule changed several times while attending Ballou. Initially, T.W. had math, art, English, and history or reading classes. *Id.* at 236-39. Each class had approximately 11 to 17 students. *Id.* T.W. indicated he did not understand some of the content, and was often pulled out of class by his teachers purportedly for being disruptive. *Id.* As part of his second schedule, T.W. attended two math classes as well as environmental science and a literacy class. A.R. 118 (T.W. Student Timetable). Each class had approximately 8-10 students, with two teachers in each class. *Id.* at 240-42. T.W. stated he "was doing perfectly" in his first math class, but had behavioral issues in his other classes. *Id.* T.W.'s final schedule, implemented in October 2010, left T.W. in his first period math class, but moved him to a single classroom for his three remaining classes. *Id.* at 244:2-245:. T.W. indicated he still had some behavioral issues, and he felt as if he only "learned anything" in his fourth period class. *Id.* at 246:2-4.

The District called only one witness at the Due Process Hearing, Shamele Straughter, the

special education coordinator at Ballou.  Ms. Straughter did not offer any testimony regarding

T.W.'s initial schedule of classes, but did explain that T.W.'s second schedule was part of

Ballou's self-contained learning disabled ("LD") program.  A.R. 258:14-259:20.  T.W. also had

a behavioral specialist, Mr. Reese, who continued to work with him in his new schedule.  *Id.* at

258:22-259:7.  Ms. Straughter noted that the LD students rotated between classes, interacting

with their non-disabled peers in the hallway, but accompanied by their special education teacher.

*Id.* at 259:17-260:17.  Ms. Straughter explained that when T.W. began to have behavioral issues

in the LD classes, he was placed in the "out-of-general-education" ninth grade emotional

disturbance ("ED") program, but remained in his first math class because T.W. enjoyed the class.

*Id.* at 261:10-262:11.  In the ED program, the students remain in the same classroom throughout

the day, and have a general education, special education, paraprofessional, and behavioral

specialist assigned to the class.  *Id.* at 262:3-11.  The ED program has eleven students, although

only eight routinely attend.  *Id.* at 262:12-18.  T.W. can earn lunch with his non-disabled peers as

a reward for good behavior, in addition to the weekly rewards program offered to the ED

students.  *Id.* at 263.  Ms. Straughter also testified that Ballou offers a number of additional

services, including tutorial and employment support programs, and extracurricular activities that

the special education students can participate in.  *Id.* at 264:2-265:10, 273:14-21.  Finally, in

reference to Ms. Cook's testimony, Ms. Straughter noted that the "support staff" Ms. Cook

believed were not providing services to the students were in fact Teach for America volunteers

observing T.W.'s math class on the same day Ms. Cook performed her second observation.  A.R.

266:2-267:7 (S. Straughter).

### 3.     Hearing Officer Determination

The Hearing Officer issued her determination on October 24, 2010.  A.R. 4 (Hearing

Officer Determination ("HOD")).  The Hearing Officer made a number of factual findings regarding T.W.'s abilities, limitations, behavior, and environment at Ballou, none of which are disputed by the parties in this case.  *See id.* at 5-12.  The Hearing Officer found that all of the witnesses were credible, except for Ms. Cook, whom the Hearing Officer found was only partially credible.  *Id*. at 12.  Ultimately, the Hearing Officer found Plaintiff failed to show T.W. was denied a free appropriate public education because (in relevant part):

(1)     Although T.W. receives only 27.6 hours of specialized instruction instead of 28.5, and he interacts more with his nondisabled peers when entering and leaving the school building, "[t]his is not a material change from what the Student's IEP requires."

(2)     Plaintiff failed to prove T.W. requires a separate day school in order to make academic progress.  The District is "essentially providing the Student the specialized and behavioral support required by his IEP" in an out-of-general education setting; and

(3)     "[The District] is required only to make available a 'basic floor of opportunity' that is 'reasonably calculated' to enable the Student to receive 'educational benefit.'  [Plaintiff] has failed to prove that the Student is not receiving educational benefit at [Ballou]."

*Id*. at 15.  Plaintiff filed suit in this Court challenging the HOD on January 21, 2011.

### III.  LEGAL STANDARD

Under the IDEA, a "party aggrieved by the findings and decision" of the hearing officer may bring a civil action in federal court "without regard to the amount in controversy."  § 1415(i)(2)(A).  The court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  § 1415(i)(2)(C).  In a civil action reviewing an IDEA administrative determination, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the

record and any additional evidence the Court may receive." *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).  Where, as here, neither party asks the Court to consider additional evidence, "the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997).

The party challenging the HOD bears the burden of proof and must "'at least take on the burden of persuading the court that the hearing officer was wrong.'" *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C. Cir. 1989)).  The preponderance-of-the-evidence standard in this context does not grant the reviewing court unfettered *de novo* review.  *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982) ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.").  Rather, courts must give "'due weight" to the administrative proceedings.  *Id.*  "'[F]actual findings from the administrative proceeding are to be considered prima facie correct.'"  *Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting *S.H. v. State–Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)).  Because the IDEA permits a reviewing court to entertain additional evidence at the request of a party, courts employ "'less deference than is conventional' in administrative proceedings."  *Reid*, 401 F.3d at 521 (quoting *Kerkam*, 862 F.2d at 887).  Nevertheless, the Court should "defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record."  *S.H.*, 336 F.3d at 270; *accord Alfono v. District of Columbia*, 422 F. Supp. 2d 1, 8 (D.D.C. 2006); *Armstrong v. District*

*of Columbia*, No. 03-2598, 2005 WL 433448, at *2 (D.D.C. Feb. 24, 2005).

## IV.  DISCUSSION

A.      *Characterization of Plaintiff's Claim*

Plaintiff and the Hearing Officer referred to Plaintiff's claim as alleging T.W. was denied

a free appropriate public education because his placement at Ballou amounted to a "change in

placement."  Under the IDEA, when the school district changes a student's educational

placement, the parents are entitled to, among other things, an impartial due process hearing to

challenge the school district's decision.  *See* § 1415(f)(1)(A).  In the interim, the student must

remain in the "then-current educational placement."  § 1415(j).  Simply changing the location

where the student receives services does not amount to a change in educational placement.  As

the Hearing Officer explained, several factors are relevant in determining whether a change in

location amounts to a change in the student's educational placement, including: (1) "whether the

child will be able to be educated with nondisabled children to the same extent"; (2) "whether the

child will have the same opportunities to participate in nonacademic and extracurricular

services"; and (3) "whether the new placement option is the same option on the continuum of

alternative placements."  A.R. 14 (HOD).  In other words, there must be a "fundamental change

in, or elimination of a basic element of the education program in order to qualify as a change in

educational placement."  *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984).

By contrast, Defendant refers to Plaintiff's claim as a "failure-to-implement" claim.  A

material failure to implement a student's IEP constitutes a denial of a free appropriate public

education.  *Banks ex rel. D.B. v. District of Columbia*, 720 F. Supp. 2d 83, 88 (D.D.C. 2010).

Although this Circuit has not directly addressed what standard applies to failure-to-implement

claims, the consensus among federal courts has been to adopt the standard articulated by the

Fifth Circuit.  *E.g.*, *S.S. v. Howard Rd. Acad.*, 585 F. Supp. 2d 56, 67 (D.D.C. 2008).  In *Houston Independent School District v. Bobby R.*, 200 F.3d 341 (5th Cir. 2000), the Firth Circuit held that "to prevail on a claim under the IDEA, a party challenging the implementation of an IEP must show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the . . . authorities failed to implement substantial or significant provisions of the IEP."  *Id.* at 349; *see also Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J,* 502 F.3d 811, 822 (9th Cir. 2007) ("[A] material failure to implement an IEP violates the IDEA.  A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP.").  "[C]ourts applying [this] standard have focused on the proportion of services mandated to those actually provided, and the goal and import (as articulated in the IEP) of the specific service that was withheld."  *Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 275 (D.D.C. 2011).  What provisions are significant in an IEP should be determined in part based on "whether the IEP services that were provided actually conferred an educational benefit."  *Bobby R.*, 200 F.3d at 349, n. 2.

In the context of the criteria used to evaluate IDEA claims, it is clear that Plaintiff's Complaint asserts a "failure-to-implement" rather than a "change in educational placement" claim.  The common feature of the criteria used to determine if a change in placement has occurred is that they require comparison of the student's previous and current (or proposed) placements.  In this case, the relevant question is not whether Ballou provides equivalent services to Children's Guild; T.W. aged out of the Children's Guild and could not remain there. Rather, the pertinent question is whether Ballou is adequately implementing T.W.'s IEP.  *See* A.R. 81 (Due Process Complaint) ("[Ballou] cannot implement the student's IEP and cannot provide him the services to which he is entitled.").  Plaintiff's allegations that Ballou failed to

provide the number of hours and types of services required by T.W.'s IEP are properly characterized as a "failure-to-implement" claim. *N.D. ex rel. Parents Acting as Guardians Ad Litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1117 (9th Cir. 2010).  In practice, the Hearing Officer applied the failure to implement standard to Plaintiff's claim, concluding (1) that the hours difference was not a "material change from what the Student's IEP requires"; (2) that "DCPS is providing the Student an out-of-general education setting, [thus] essentially providing the student the specialized and behavioral supports required by his IEP"; and (3) "Petitioner has failed to prove that the Student is not receiving educational benefit at the DCPS School."  A.R. 15 (HOD).  For the sake of accuracy, the Court will refer to Plaintiff's Complaint as a failure to implement claim.

> **B.**      *Merits of Plaintiff's Complaint*

Although Plaintiff's specific arguments are often vague and unclear, Plaintiff alleges two general flaws in the Hearing Officer Determination: (1) the Hearing Officer erred in finding that the placement of T.W. at Ballou did not deny T.W. a free appropriate public education; and (2) the Hearing Officer erred in failing to determine whether the failure of T.W.'s social worker, Ms. Feltom from the Children's Guild, to attend the MDT meeting in July 2010 denied T.W. a free appropriate public education.  Notably, Plaintiff does not challenge the sufficiency of the findings of fact and conclusions of law provided in the Hearing Officer Determination.  *Cf. S.B. v. District of Columbia*, 783 F. Supp. 2d 44, 51 (D.D.C. 2011).  Furthermore, Plaintiff does not claim the IEP at issue was inappropriate.  As explained below, Plaintiff failed to carry her burden to show that the Hearing Officer Determination should be reversed and/or remanded for further findings.

1.      <u>T.W.'s Placement at Ballou did not Deny T.W. a Free Appropriate Public Education</u>

Plaintiff initially argues that the Hearing Officer erred in concluding that placing T.W. at Ballou did not deny T.W. a free appropriate public education.  Specifically, Plaintiff alleges Ballou failed to implement material portions of T.W.'s IEP because (1) the District failed to consider placing T.W. in a private school; (2) Ballou is not a separate day school; (3) T.W. receives only 27.6 hours of instruction per week instead of the 30 hours required by his IEP; and (4) T.W. has had behavioral issues since enrolling at Ballou.  None of these arguments are sufficient to warrant reversal of the Hearing Officer Determination.

        a.      The District was not required to consider private placements.

First, Plaintiff argues that the District erred in failing to consider Plaintiff's proposal to place T.W. at the High Road Academy, a private school.  Pl.'s Mot. at 12-13.  However, as Plaintiff notes in the same paragraph, the District need not consider private placement where an appropriate public placement is available.  *Id.* at 13 (quoting *Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C. Cir. 1991)).  In other words, if placing T.W. at Ballou satisfied the requirements of T.W.'s IEP, then the District was not required to consider placing T.W. at High Road Academy or any other private school.  Since the Court finds the HOD was correct, and T.W.'s placement at Ballou is appropriate, the District was not required to consider private placement alternatives for T.W., and Plaintiff's first argument lacks merit.

        b.      Ballou fully implements the services required by T.W.'s IEP.

Second, Plaintiff argues that Ballou fails to implement substantial portions of T.W.'s IEP because Ballou is not a "separate day school."  In support of this argument, Plaintiff vaguely alleges that Ballou cannot provide the "level of services, as they related to the type and

duration," and that these services "could only be carried out in [sic] separate day school facility." Pl.'s Mot. at 10; Pl.'s Reply at 6.

The IEP specifies that T.W. should be placed in an educational environment that includes a "behavior modification program," "small structured class size," and "on staff therapists." A.R. 15 (IEP). At Ballou, T.W. has a dedicated behavior specialist with him in his ED classes at all times. A.R. 267:11-268:3 (S. Straughter). Ballou also has a behavior modification program in place in the form of weekly rewards and earned lunches. *Id.* at 273:10-275:12. The school has a number of additional services available, including tutorial and employment support services. *Id.* at 264:2-265:10. In terms of class size, T.W.'s ED class has a maximum of eleven students, although only eight regularly attend. *Id.* at 262:12-18. A general education teacher, a special education teacher, a paraprofessional, and a behavioral specialist are assigned to the ED class. *Id.* at 262:7-11. T.W.'s LD math class has eight to ten students and two instructors. *Id.* at 240-242 (T.W.). T.W. receives routine and as-needed counseling from his social worker, Ms. Lisa Campbell. *Id.* at 272:4-273:9 (S. Straughter).

Plaintiff never identifies what services required by T.W.'s IEP are not provided by Ballou and can only be provided by a separate day school. Plaintiff never explains why the behavioral reward system explained by Ms. Straughter is inadequate. Even if the behavioral modification system in place at Ballou differs from that used at Children's Guild, that difference alone would not amount to a failure to implement T.W.'s IEP because the IEP itself does not specify what type of behavior modification system must be used, or how it should be implemented. *Van Duyn*, 502 F.3d at 824. Nor does Plaintiff identify what additional structure T.W.'s classes might require so as to satisfy the IEP requirement of "small structured class size." The latter omission is particularly striking given that the representative from High Road

Academy testified that it provides a similar if not less-structured class room, with nine to ten students and two instructors per class.  A.R. 152:13-17 (C. Anyanwu).  T.W. receives all of the counseling hours required by the IEP from an on-staff therapist that T.W. can meet with whenever he has issues, in addition to having a dedicated behavior specialist in class.  All of the "services" specified in T.W.'s IEP are being provided by Ballou.  Even if, as Plaintiff claims, High Road Academy offers additional services and behavioral support, "proof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the [IDEA]."  *Kerkam*, 862 F.2d at 886 (noting the Supreme Court has rejected the notion that the IDEA requires schools to maximize the potential of disabled students).

The IEP explicitly requires a separate day school, because at the time it was drafted, the "services required to support IEP" were not available in a general education environment.  A.R. 45.  The fact that Ballou is not technically classified a separate day school is not a substantial departure from T.W.'s IEP when all of the enumerated services and the required class structure are provided.  Based on the record before the Hearing Officer and this Court, Plaintiff fails to show by a preponderance of the evidence that Ballou fails to provide the "level of services" required by T.W.'s IEP.

        c.      The shorter length of T.W.'s classes at Ballou is not a material failure to implement T.W.'s IEP.

Third, Plaintiff contends that Ballou fails to implement a significant portion of T.W.'s IEP because T.W. receives only 27.6 hours of instruction instead of the 28.5 hours of specialized instruction and 1.5 hours of behavioral support services required by the IEP.  A.R. 45 (IEP).  As Defendant points out, Plaintiff's calculation of the relevant hours is partially incorrect.  Each day, T.W. attends four classes, each eighty three minutes long, for a total of 332 minutes of

instruction per day.  *Id.* at 278:3-11 (S. Straughter).  Over the course of a five day school week,

T.W. receives 1660 minutes of specialized instruction, or 27 and two thirds hours, just fifty

minutes less per week than required by the IEP.  At the Due Process Hearing, Ms. Straughter

admitted that the school day at Ballou did not provide the full amount of specialized instruction

outlined in T.W.'s IEP.  *Id.* at 279:21-280:12.  Ms. Straughter also noted that T.W. receives the

full 1.5 hours of behavioral support services dictated by the IEP.  *Id.* at 272:4-19.  In other

words, each day, T.W.'s specialized instruction time is only ten minutes less than required by the

IEP, but the mandatory 1.5 hours of "behavioral support services" are being provided in full.

In some cases, the failure to provide the requisite number of hours of instruction or

services provided in the student's IEP has been found to be a material failure to implement.  For

example, in *Sumter County School District 17 v. Heffernan ex rel. T.H.*, 642 F.3d 478 (4th Cir.

2011), the student, who was moderately to severely autistic, received only seven and one half to

ten of the fifteen hours of instruction dictated by his IEP.  *Id.* at 481.  The district court

concluded that the missing hours, in combination with the school's failure to utilize the teaching

techniques specified in the IEP, amounted to a failure to implement the student's IEP.  *Id.*  The

Fourth Circuit found that the district court's conclusion was not clear error in light of the missing

hours, the fact that the instructors failed to utilize the proper teaching techniques, and the fact

that it took several months for another instructor to correct the problems caused by the improper

teaching techniques.  *Id.* at 484-86.  Similarly, the Ninth Circuit in *Van Duyn* found that the

school failed to implement the student's IEP by denying him five of the eight to ten hours of

math instruction required in the student's IEP.  502 F.3d at 823-24.  By contrast, in *Catalan v.*

*District of Columbia*, 478 F. Supp. 2d 73 (D.D.C. 2007), the student's IEP required that the

student receive three, forty-five minute sessions of speech therapy per week.  The student missed

several sessions because of the unavailability of the therapist, and some sessions were terminated early because the student's "fatigue was rendering the therapy unproductive." *Id.* at 76. Judge Henry H. Kennedy found that since the student received consistent speech therapy, the failure to provide all of the required sessions was not a material deviation from the student's IEP. *Id.*

The minimal difference in hours provided by Ballou and required by T.W.'s IEP—less than one hour per week—makes this case more akin to *Catalan* than *Sumter* or *Van Duyn*. In both *Sumter* and *Van Duyn*, the student received only half of the hours dictated in the student's IEP. Here, T.W. receives 97% of the hours required by his IEP. Quantitatively, a 3%, or ten minute per day deviation is not a material to T.W.'s IEP. Qualitatively speaking, Plaintiff failed to provide any evidence or testimony demonstrating that these ten minutes per day of instruction was important to achieving the goals set out in T.W.'s IEP. At no point during the Due Process hearing did Plaintiff even attempt to argue that the missing minutes deprived T.W. of any educational benefit, much less all educational benefit. Moreover, as explained above, T.W. receives all of the services required by his IEP within the hours of instruction provided by Ballou. With no allegation that the shorter class schedule deprives T.W. of an educational benefit, and in light of the fact he receives all of the services required by the IEP, even if the missing minutes were quantitatively significant, the difference would not be significant enough to support a failure to implement the IEP claim. *See Bobby R.*, 200 F.3d at 349. Therefore, the Court agrees with the Hearing Officer's finding that the hours of instruction provided by Ballou were "not a material change from what the Student's IEP requires." A.R. 15 (HOD).

        d.      T.W.'s behavioral issues do not show that Ballou failed to implement T.W.'s IEP.

Plaintiff's final argument regarding the failure to implement claim is that T.W.'s

behavioral issues at Ballou demonstrate his IEP was not implemented properly.  Plaintiff cites

two pieces of evidence in support of this argument: T.W.'s suspensions from school and Ms.

Cook's observations of T.W.  Initially, T.W. had behavioral issues, including the phone calls

from his teachers which appear to have significantly declined since T.W. was moved into the ED

class.  *See* A.R. 180:6-10 (E. Savoy).  Second, most of Ms. Cook's observations are irrelevant

since T.W. is no longer in the classes in which Ms. Cook observed him.  The only relevant

observation of T.W., Ms. Cook's second observation performed in October 2010, involved the

unusual circumstance of having several Teach for America volunteers observing the class as

well.  A.R. 266:2-267:7 (S. Straughter).  Rather than speak to T.W.'s teacher regarding the other

adults in the room, Ms. Cook simply speculated that they were support staff who failed to

provide any support to the students.  *Id.* at 220:12-19 (D. Cook).  On this basis, the Hearing

Officer found Ms. Cook was only partially credible, a finding to which the Court defers given

the absence of facts in the record to second guess the Hearing Officer's finding.  *Richardson v.*

*District of Columbia*, 541 F. Supp. 2d 346, 356 (D.D.C. 2008).

Even if the Court were to credit Ms. Cook's observation that T.W. had to be redirected

several times and simply laid his head on his desk for most of his math class, Plaintiff has still

failed to provide sufficient evidence to show T.W. is not receiving an educational benefit.  The

IDEA only requires the District to provide T.W. with an educational program "sufficient to

confer some educational benefit."  *Leonard ex rel. Leonard v. McKenzie*, 869 F.2d 1558, 1562

(D.C. Cir. 1989) (quoting *Rowley*, 458 U.S. at 189) (internal quotation marks omitted).  Ms.

Straughter testified that T.W. is on track to receive a diploma and was addressing the specific

goals in his IEP.  A.R. 302:2-13.  Plaintiff did not provide any testimony from T.W.'s teachers,

support staff, social worker, or otherwise that would contradict Ms. Straughter's statement.  The

preponderance of the evidence in the record indicates that T.W. receives some educational

benefit from his classes at Ballou despite the behavioral issues observed by Ms. Cook and

reported by the school.

In her motion, Plaintiff argues that "the question for the hearing officer should have been

was [sic] whether the District's placement of T.W. at Ballou allowed for him to gain [sic]

educational benefit as it related to progress and advancement."  Pl.'s Mot. at 13.  As the Hearing

Officer Determination explicitly notes, this is the question the Hearing Officer considered.  A.R.

15.  The Hearing Officer concluded, as does the Court, that Plaintiff failed to present evidence

that T.W. could not access the curriculum and was not receiving an educational benefit at Ballou.

*Id.*

Plaintiff attempts to refine the argument, positing that the "specific" relevant question is

whether T.W.'s transfer into the ED class "allowed him to adequately participate in [sic]

curriculum."  Pl.'s Mot. at 13.  Plaintiff's counsel briefly argued during his closing statement

before the Hearing Officer that it was "troubling" that T.W. was placed in an ED class despite

being classified as primarily learning disabled.  However, Plaintiff failed to introduce any

evidence into the record indicating T.W. could not "participate in [the] curriculum" in the ED

class.  While cross-examining Ms. Straughter, after pointing out that T.W. is classified as LD

rather than ED, Plaintiff's counsel did not ask any questions about the ED curriculum or T.W.'s

progress in the class.  A.R. 291:11-293:4.  Plaintiff herself admitted that she knew nothing about

the ED program.  *Id.* at 181:11-15.  Admittedly, T.W. had some behavioral issues in his LD

classes, which arguably disrupted T.W.'s learning and academic progress.  *See id.* at 212:3-

221:22 (D. Cook).  However, those behavioral issues have lessened since T.W. was placed in the

ED classes, indicating if anything placement in the ED classes has increased T.W.'s ability to

access the curriculum.  *See id.* at 180:6-10 (E. Savoy).  There is simply no evidence to support a finding that T.W. cannot access the relevant curriculum in the ED class, and the Court finds Plaintiff failed to meet her burden to show Ballou failed to implement T.W.'s IEP.

> 2. The Hearing Officer's Purported Failure to Consider the Composition of the Multi-Disciplinary Team does not Require Remand

Plaintiff also argues that the District violated the procedural requirements of the IDEA by convening a MDT meeting in July 2010 without a required team member: T.W.'s social worker, Ms. Feltom, from the Children's Guild.  The Court agrees with Defendant that this argument was not properly raised before the Hearing Officer, and in the alternative, Plaintiff failed to show the absence of the social worker violated T.W.'s substantive rights.

> a. Plaintiff did not properly raise the issue of the composition of the MDT team before the Hearing Officer.

"Absent evidence that 'an attempt was made to raise this issue before the hearing officer' and 'absent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the IDEA before seeking judicial review under the Act.'"  *Roark*, 460 F. Supp. 2d at 43 (quoting *Herbin ex rel. Herbin v. District of Columbia*, 362 F. Supp. 2d 254, 263 n.10 (D.D.C. 2005)).  Defendant contends that Plaintiff failed to raise the issue of the MDT team's composition before the Hearing Officer, and therefore cannot raise the issue before this Court.  The Court finds that although Plaintiff briefly raised the issue in the pre-hearing pleadings, Plaintiff ultimately abandoned the issue at the Due Process Hearing.

In the section of the Due Process Complaint entitled "Nature of the Problem," Plaintiff briefly states that "[the District] failed to ensure that the appropriate persons were present at the student's MDT meeting from the Children's Guild, most importantly, the student's social worker and/or therapist."  A.R. 81.  The rest of the Due Process Complaint is silent on this issue.

Plaintiff did not raise the absence of the social worker in the "Issues Presented" section of the Due Process Complaint, nor did Plaintiff request any relief on this issue. *Id.* at 81-82. This issue is also included in the initial Prehearing Order. A.R. 103 (9/27/10 Prehearing Order). In addition, Plaintiff appears to have raised the issue during the "resolution meeting" held with a compliance officer prior to the Due Process Hearing. *Id.* at 92-93, 96 (Resolution Meeting Notes). Nevertheless, at the Hearing itself, Plaintiff failed to present any evidence in support of this claim.

Plaintiff's counsel did not identify the absence of T.W.'s social worker, Ms. Shaun Feltom, as an issue in either his opening or closing statements. A.R. 141:11-145:22, 304:4-307:6, 310:9-312:7. Plaintiff's counsel asked Plaintiff about the July 2010 meeting, including whom from DCPS was present, but did not elicit any testimony from Plaintiff regarding T.W.'s social worker. *Id.* at 177:1-8. Ms. Cook mentioned the meeting, and began discussing the purported recommendations made by Ms. Feltom. *Id.* at 200:20-201:16. The District objected, and Plaintiff's counsel noted that Ms. Feltom's progress report were included with the notes from the meeting, and included in the record before the Hearing Officer. *Id.* at 201:17-202:6. After clarifying that Ms. Cook was discussing what Ms. Feltom had stated at a previous MDT meeting, not the July 2010 meeting, the Hearing officer limited Ms. Cook's testimony to what Ms. Cook stated at the July meeting, and not what the social worker purportedly recommended on some earlier ocassion. *Id.* at 202:16-205:5. Although Ms. Cook continued to testify about the MDT's discussions, she did not claim that Ms. Feltom's absence was an issue or might have led to a different outcome. *Id.* at 206:21-211:9. Ultimately, Plaintiff failed to provide any testimony to indicate that Ms. Feltom's absence at the July 2010 MDT meeting was an issue Plaintiff sought to have the Hearing Officer resolve. "[T]his Court cannot address an issue that was not

first presented to the hearing officer," therefore Plaintiff's request to remand this issue to the

Hearing Officer for further determination is denied.  *Roark*, 460 F. Supp. 2d at 43.

> b.   Plaintiff failed to introduce evidence that the absence of T.W.'s
> social worker impaired T.W.'s or Plaintiff's substantive rights.

"[A] claim based on a violation of IDEA's procedural requirements 'is viable only if

those procedural violations affected the student's *substantive* rights.'"  *Kingsmore ex rel. Lutz v.*

*District of Columbia*, 466 F.3d 118, 119 (D.C. Cir. 2006) (quoting *Lesesne v. District of*

*Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006)).  Assuming for the sake of argument Plaintiff

effectively raised this issue before the Hearing Officer, remand is not warranted in light of

Plaintiff's failure to submit evidence showing the procedural violation affected T.W.'s or

Plaintiff's own substantive rights under the IDEA.  In her initial motion, Plaintiff wholly omitted

any reference to any substantive prejudice caused by Ms. Feltom's absence.  Once prompted by

Defendant in its Opposition, Plaintiff argued that her "opportunity to participate in the student's

decision making process was diminished by the fact that the required input of the social worker's

[sic] would have presumably provided the team with insight as to the level of behavioral

intervention T.W. required and whether or not the student's educational program, including

placement."  Pl.'s Reply at 9. Notably, even with this response Plaintiff fails to allege Ms.

Feltom *would* have provided input that would have affected T.W.'s placement or services, but

merely *presumes* that she would have done so if she had attended the July 2010 meeting.

Moreover, at no point does Plaintiff explain exactly what insight Ms. Feltom might have

provided, or even what placement she might have recommended.  Ms. Cook, as T.W.'s

educational advocate would be in the best position to explain what insight Ms. Feltom might

have offered, yet Ms. Cook never raised Ms. Feltom's absence as an issue during her testimony.

Ms. Feltom's report, which the MDT had at is disposal during the July 2010 meeting, does not recommend changing T.W.'s IEP, and Plaintiff did not challenge the appropriateness of the IEP. A.R. at 64-66.  Rather, the report recommends continuing all aspects of T.W.'s placement and course of treatment.  *Id.* at 66.  There is simply no evidence in the record to support the notion that Ms. Feltom's presence at the July 2010 MDT meeting would have provided any information in addition to or different from the report that would have affected the discussion and in turn implicated Plaintiff's or T.W.'s substantive rights under the IDEA.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff failed to show by a preponderance of the evidence that the Hearing Officer erred in concluding that T.W. was not denied a free appropriate public education.  The District was not required to consider private placement for T.W. because an adequate public placement was available.  Ballou Senior High School provides all of the services required by T.W.'s IEP.  The shorter school day at Ballou is not a material deviation from T.W.'s IEP since T.W. receives 97% of the hours of instruction dictated by the IEP, receives all of the services required by his IEP, and there is no evidence the missing time is material to T.W.'s IEP.  Despite T.W.'s behavioral issues early on at Ballou, his behavior has improved since moving into the ED class, and there is no evidence in the record to indicate T.W. is not receiving an educational benefit from the program.  Finally, because Plaintiff failed to raise before the Hearing Officer the issue of the composition of the July 2010 meeting of the MDT team, and failed to present any evidence that the procedural issue violated T.W.'s substantive rights, the Court does not reach the claim.  Therefore, Plaintiff's [11] Motion for Summary Judgment is DENIED and Defendant's [13] Cross-Motion for Summary Judgment is GRANTED.

24

An appropriate Order accompanies this Memorandum Opinion.


Date: February 21, 2012


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge